Sonia M. Mercado (SBN: 117069)
**SONIA MERCADO & ASSOCIATES**
R. Samuel Paz (SBN: 62373)
**LAW OFFICES OF R. SAMUEL PAZ**
5701 W. Slauson Avenue, Suite 202
Culver City, California 90230
Telephone: (310) 410.2981
Facsimile:     (310) 410-2957

Attorneys for Plaintiffs,
Fonda Whitfield and Estate of Deon
Whitfield; and Alan Feaster, Gloria
Feaster, and Estate of Durrell Feaster

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FONDA WHITFIELD and THE ESTATE OF DEON WHITFIELD,<br><br>　　　　　Plaintiffs,<br>v.<br><br>STATE OF CALIFORNIA; STATE OF CALIFORNIA YOUTH AUTHORITY; JERRY HARPER; WALTER ALLEN III, JEFF HARADA; DR. PARAGUAN; HAMID SIAL, M.D.; et al,<br><br>　　　　　Defendants.<br>_____<br><br>AND RELATED CASES.<br>_____<br><br>This Document Relates To: All Actions.<br>_____ | CONSOLIDATED CASES:<br><br>CASE NO. CV-04-2729 GEB (JFM)<br>　　　　(Master File)<br>c/w case No. CV-04-2730 GEB (JFM)<br><br>[Hon. Garland E. Burrell]<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE AND DISMISS.**<br>[<br>Date:　　　　January 22, 2007<br>Time:　　　　9:00 a.m.<br>Courtroom:　10<br>Judge:　　　Hon. Garland E. Burrell, Jr.<br><br>Pre-trial Conf:　July 23, 2007<br>Trial Date:　　November 27, 2007 |

**PLEASE TAKE NOTICE THAT CONSOLIDATED PLAINTIFFS HEREBY FILE THIS OPPOSITION.**

On January 19, 2004, two young wards, Deon Whitfield and Durrell Feaster, were found hanging by their necks with bed sheets attached to their bunk beds in an isolation cell of the Ironwood Lodge facility of the California Youth Authority. Both boys had well-documented medical histories of serious mental health problems, including suicidal ideation

and even suicide attempts. Although both youths were known by CYA staff to be "high risks for suicide," nonetheless, they were moved into a building containing rows of sensory deprivation isolation/disciplinary cells. On numerous occasions, in writing and in senior staff meetings during six months before their deaths, CYA's senior psychologists, custody staff leaders and experts had warned CYA administrators that these locations weres dangerous and created a high risk of suicide, following serious suicide-related incidents six months before.

These consolidated actions are brought by the parents of the deceased minors claiming damages for wrongful death and the Estates of Deon Whitfield and Durrell Feaster as a survival action. Each alleges claims against the public employees and public entity Defendants for violations of federal civil rights laws under 42 U.S.C. § 1983 for individual liability, entitu and supervisor liability for failure to train and supervise causing constitutional violations; policy, custom, or practice causing constitutional violations; violations of the Americans with Disabilities Act; violation of Government Code Section 845.6; and state actions for general negligence and medical negligence.

Plaintiffs' actions have been consolidated after the filing of a First Amended Complaint by the Whitfield and Feaster Plaintiffs. Defendants filed a Motion to Dismiss. Consolidated Plaintiffs hereby file this Opposition as a consolidated response as to each case's First Amended Complaint, which contain practically identical allegations.

Dated: January 8, 2007                     **LAW OFFICES OF R. SAMUEL PAZ**


                                            By:   /s/ R. Samuel Paz
                                                  R. Samuel Paz, Esq.

2

## MEMORANDUM OF POINTS AND AUTHORITIES

1. **UNDER PREVAILING AUTHORITY AN ESTATE CAN CLAIM DAMAGES FOR DECEDENT'S PAIN AND SUFFERING, THUS THE FED. R. CIV. PRO. RULE 12 (f) MOTION TO DISMISS SHOULD BE DENIED.**

   A. **The Legal Standard to Grant a FRCP Rule 12 b 6 Claim for Relief Which Is Supported by Law.**

The Motion asserts that Plaintiffs' claims for recovery of damages for "pain and suffering . . . is prohibited as a matter of law." (Motion pg. 4:12-14) ..... Such damages "are not recoverable as a matter of law." (Motion pg. 4:8-9.)  However the motion cites not a single authority for these propositions.  Rather, it relies on the single district court order in *Venerable v. City of Sacramento,* 185 F. Supp. 2d 1128 (E.D. Cal 2002), a case factually and legally distinct from these consolidate actions.

The motion must be denied as the vast majority of the federal courts have considered the issue in this circuit and nationwide and have determined that a decedent's pain and suffering is recoverable under 42 U.S.C. § 1988 and under 42 U.S.C. § 1983 action for violation of constitutional rights and under the Americans with Disabilities Act (ADA).  As will be discussed below (see section 1d), the moving papers inappropriately seek to mislead this Court by asserting that the two unpublished opinions it cites can be considered as binding authority.  Further, the motion concedes by failing to argue or provide authority to strike Plaintiffs' allegation for damages for "loss of enjoyment of life" (See Section 1 E below.)

Federal Rule of Civil Procedure 12(f) permits a district court, on motion of a party, to "order stricken from any pleading any insufficient, redundant, immaterial, impertinent, or scandalous matter." Id.  Rule 12(f) motions are generally viewed with disfavor " because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." 5A A. Charles Alan Wright et al., Federal Practice & Procedure §  1380, 647 (2d ed. 1990). *Waste Management v. Gilmore,* 252 F.3d 316, 348 (4th Cir. 2001).  Here, given that there is no authority cited in support of the motion that any

portion of the complaint is "insufficient, redundant, immaterial, impertinent, or scandalous matter" and given the weight of authority that Plaintiffs can proceed with their claims for damages, it seems that the purpose for this motion is another dilatory tactic.

The Motion may also be addressed as a Fed. R. Civ. Pro 12 (b) (6) motion to dismiss for failure to state a claim which will be denied unless it appears that the plaintiff can prove no set of facts which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) The motion is properly granted where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). As will be demonstrated below, the First Amended Complaint alleges cognizable claims which includes as an element of recovery, pain and suffering damages by the estate.

**B.      Damages Remedies for a Violation of Constitutional Rights Have Been Recognized to Effectuate the Broad Purposes of Federal Civil Rights Laws.**

Defendants motion seeks to restrict damages recovered in this action to the parents to minimal funeral expenses, and non-economic damages. In essence, they seek to ignore the purposes of damages under § 1893, established by the U.S. Supreme Court, and make this into a simple tort (e.g., an auto accident) case, knowing that the minors had no earning power and could offer, at this stage of their life, no economic support to their parents. They base their argument under California's restrictive "survival" statute, Code Civ. Pro. § 377.34 which excludes "damages for pain and suffering or disfigurement." Such an outcome would be contrary to federal law and to the remedial purposes of § 1983 [1] , as well as to any decent sense of justice. The essence of the argument is that the evidence of Defendants' reckless

---

[1]  § 1983 is one of the Reconstruction-era statutes enacted in response to the lawlessness of the Ku Klux Klan and its sympathizers and the tacit acceptance of the KKK by southern local governments and law enforcement agencies. It is now unquestionably "the main [statutory] vehicle for constitutional tort litigation." *Archie v. City of Racine*, 847 F.2d 1211, 1226 (7th Cir. 1988) (Posner, J., concurring).

2

and inhuman treatment of the minors and denial of medical and mental health care, admittedly violations of constitutional rights, are not compensable to these minors through the Estate.  Such a holding is contrary to federal holdings that violations of the rights protected by  § 1983 are, indeed compensable.

Nationwide, cases alleging damages under  § 1983  have been held to have distinct purposes that have expanded the recovery of damages for the pain and suffering of the deceased before his/her death and for recovery of damages for the deceased's "right to life" by the heirs or the authorized representative of the estate.  The basic purposes of an award of damages under § 1983 is: (1) to compensate plaintiffs for injuries caused by deprivations of their federal constitutional or statutory rights; and, (2) the award often serves an important function "to prevent or deter 'official illegality'." *Robertson v. Wegmann,* 436 U.S. 584, 590-592 (1978).

In order to carry out these policy purposes the survivors in such cases can recover damages for pain and suffering experienced by the decedent prior to death.  In *Greene v. Vantage S.S. Corp.,* 466 F.2d 159, 166 n.9 (4th Cir. 1972) the  court commented that "there is no federal policy against awarding damages for pain and suffering" under these circumstances.  *In re Korean Air Lines Disaster,* 807 F. Supp. 1073, 1081 (S.D.N.Y. 1992) also opined that there was "no federal statutory or common law bar to the survival action brought by the decedent's estate . . . to recover damages for decedent's conscious pain and suffering".  Most courts first look to state law for the appropriate remedy for § 1983 violations.  E.g., *Bell v. City of Milwaukee,* 746 F.2d 1205, 1236 (7th Cir. 1984) (state survival statute allows for recovery of damages for decedent's conscious pain and suffering); *Berry v. City of Muskogee,* 900 F.2d 1489, 1505 (10th Cir. 1990) (same).

However, many state survival statutes, including several in the Ninth Circuit, preclude any recovery for the decedent's pain and suffering.  For example, in *Kirk v. Washington State Univ.,* 746 P.2d 285, 292 (Wash. 1987) it was noted that damages for pain and suffering were "expressly barred from recovery" under the Washington survival statute which was later modified.  In *Garcia v. Whitehead,* 961 F. Supp. 230, 232 (C.D. Cal. 1997) the court pointed

3

out that "California's survivorship statute ... specifically excludes damages for a decedent's pain and suffering." Thus because the policy goals of § 1983 are defeated by a restrictive state law, most federal courts have rejected the use of restrictive state statutes and allowed plaintiffs in actions under § 1983 to recover full damages for pain and suffering of the decedent prior to death and for loss of life based on federal common law.

While § 1983 does not specifically address what damages are recoverable arising from the death of a person by a governmental official, federal law sets forth a three-step analysis for determining those issues:

> "First, courts are to look to the laws of the United States 'so far as such laws are suitable to carry [the civil and criminal statutes] into effect.' [42 U.S.C. § 1988.] If no suitable federal rule exists, courts undertake the second step by considering application of state 'common law, as modified and changed by the constitution and statutes' of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not 'inconsistent with the Constitution and laws of the United States.'" *Golden State Transit Corp. v. City of Los Angeles,* 773 F.Supp. 204, 208 (C.D. Cal. 1991), quoting *Burnett v. Grattan,* 468 U.S. 42, 47-48, 104 S. Ct. 2924 (1984).

As the Supreme Court explained, "This means, as we read § 1988, that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes." *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 240 (1969) (emphasis added).

**C.    The Vast Majority of Federal Courts Allow for Recovery by an Estate for Pain and Suffering of the Deceased Before His/her Death Caused by the Violation**.

Contrary to the Defendants' claim that "as a matter of law" damages for the pain and suffering of the decedents do not survive there death, the vast majority of federal precedent supports the position that an estate may recover "loss of life and pain and suffering of the

4

deceased in an § 1983 action.² In *Guyton v. Phillips,* 532 F. Supp. 1154 (N.D. Cal. 1981) the action was brought by the estate of the deceased minor by his mother.  Guyton was an age 14 years, small, slight, black male whose death was caused by gunshot wounds inflicted by two officers following a car chase.  Id., 1156.  Under state survival law the estate could not recover for pain and suffering sustained prior to death nor for the loss of life. The court held that the estate was entitled to recover for loss of life and pain and suffering.

> However, taking heed of the guidance offered by the majority in *Robertson*, this court follows what appears to be the present interpretation of § 1988. (Fn and cite omitted.) Therefore, we look to the state statute, and if an inconsistency with federal law is found, we look to federal common law.  This court is persuaded by the intent of the Act, the narrow ruling and discussion by the Supreme Court in *Robertson,* and the holdings in *Basista v. Weir, supra,* and its progeny, that California's survival statute, insofar as it excludes recovery for pain and suffering, is inconsistent with § 1983.  Its restrictions on recovery are significantly inhospitable to the policies fostered by the

---

² Across the country, courts have been virtually uniform in finding state remedies inadequate in one way or another, and have supplemented the damages allowed in federal civil rights death cases. *See*, Brazier v. Cherry, 293 F.2d 401, 409 (5th Cir. 1961) (survival and wrongful death, including pain and suffering and "full value of the life of the decedent"); Rhyne v. Henderson County, 973 F.2d 386, 390-391 (5th Cir. 1992) (survival and wrongful death); Bell v. City of Milwaukee, 746 F.2d 1205, 1240-1241 (7th Cir. 1984) (survival, wrongful death, pain and suffering, loss of life); Bass v. Wallenstein, 769 F.2d 1173, 1189-1190 (7th Cir. 1985) (same); Graham v. Sauk Prairie Police Com'n., 915 F.2d 1085 (7th Cir. 1990) (same); Andrews v. Neer, 253 F.3d 1052, 1063 (8th Cir. 2001) (pain and suffering, loss of future earnings, the victim's loss of consortium, and other common law damages); Berry v. City of Muskogee, 900 F.2d 1489, 1499-1507 (10th Cir. 1990) (same); Carringer v. Rodgers, 331 F.3d 844, 847-850 (11th Cir. 2003) (survival and wrongful death, including pain and suffering and "full value of the life of the decedent"); McFadden v. Ivy, 710 F.2d 907, 911 (2nd Cir. 1983) (punitive damages, despite restrictive state survival statute); Banks v. Yokemick, 177 F.Supp.2d 239 (S.D.N.Y. 2001) (wrongful death, pain and suffering, loss of life); Heath v. City of Hialeah, 560 F.Supp. 840 (S.D. Fla. 1983) (federal common law, including pain and suffering); Weeks v. Benton, 649 F. Supp. 1297, 1308-09 (S.D. Ala. 1986) (wrongful death, pain and suffering), among numerous other courts.

5

Act. (Cites omitted.) **To deny recovery for pain and suffering would strike at the very heart of a § 1983 action.** Id., 1166 (emphasis added). [3]

In *Williams v. City of Oakland,* 915 F. Supp. 1074, (N.D. Cal. 1996) plaintiff filed her § 1983 alleging that officers unlawfully seized, searched and used excessive force. Plaintiff died before the action was tried from causes unrelated to the incident. Her husband substituted into the action as the administrator of her estate representing himself and her heirs and survivors. The court concluded that *California survival law's disallowance of recovery for a deceased plaintiff's pain and suffering*, as expressed in C.C.P § 377.34, *is "inconsistent with section 1983* [even in cases] when the victim's death was not a result of the constitutional violation," (id., 1077) stating:

> Here, the deceased plaintiff's husband is in a position to vindicate his wife's rights and receive an award of compensatory damages. He is within the familial range of those affected by defendants' conduct. **To deprive him or other survivors of the only element of damages that the deceased might have been able to recover would have a serious adverse effect on the policies underlying section 1983.** (Id., 1078, emphasis added.)

In *Garcia v. Whitehead,* 961 F. Supp. 230 (C.D. Cal., 1997) then District Judge Pragerson denied defendant's motion in limine to exclude pain and suffering of the deceased

---

[3] The *Guyton* at fn. 6 court found it important to note that **pain and suffering sustained prior to death is recoverable in a majority of jurisdictions as having survival statutes** or hybrid survival-wrongful death statutes that allow recovery for a decedent's conscious pain and suffering prior to death: Arkansas, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Pennsylvania, Puerto Rico, South Carolina, South Dakota, Tennessee, Texas, Vermont, and Wisconsin, in addition to specific federal statutes and decisions under the general maritime law.

6

as damages in a § 1983 action against the County of San Bernardino and a deputy alleging excessive force was used against the Decedent.  There the Court stated:.

> Thus, **the deterrent purpose of section 1983 "is hardly served when the police officer who acts without substantial justification suffers a harsher penalty for injuring or maiming a victim than for killing him.**" [cite omitted]  The Guyton court concluded that "to deny pain and suffering damages would strike at the very heart of a section 1983 action . . . . Absent such a remedy, the section 1983 claim amounts to little more than a tort claim." Id., emphasis added..

In *Davis v. City of Ellensburg,* 651 F. Supp. 1248, 1256 (E.D. Wash. 1987), the § 1983 claim arose out of the decedents' death during his arrest.  The defendants based their position that the § 1983 claims were subject to Washington's survival statute precluding recovery for "pain and suffering ... personal to and suffered by a deceased." Id., 1255-56, quoting Wash. Code  4.20.046(1) (1988).  Plaintiffs argued that *Guyton v. Phillips,* was more applicable in that the statues' limitation on recovery of pain and suffering prior to death was inconsistent with § 1983's deterrent objective. Id., 1250.

The *Davis* court agreed that applying Washington's survival statute that excluded damages for pain and suffering would be inconsistent with § 1983 because defendants would not be sufficiently deterred from killing their victims, where the constitutional deprivation results in death would create a rule in terms of liability and deterrence where, from the point of the defendant, "it was better to kill them than leave them alive." The *Davis* court phrased the contrary situation as a "substantial deterrent effect to conduct that results in the injury of an individual but virtually no deterrent to conduct that kills the victim. Id., 1256.

Similarly, in *Heath v. City of Hialeah,* 560 F. Supp. 840 (S.D. Fla. 1983), in a § 1983 action brought by the estate of a youth who was shot and killed by a police officer, the court held that a Florida law which would preclude survival of the action was inconsistent with § 1983 policy, and that federal common law which allows the action to survive governed the estate's recovery.  (See also *O'Connor v. Several Unknown Correctional Officers,* 523 F. Supp. 1345 (E.D. Va. 1981), (state law held to be inconsistent with the § 1983 policy of

7

deterring unconstitutional deprivations of life by state officials, allowing the estate's § 1983 claim.)

In *Sanchez v. Marquez,* 457 F. Supp. 359 (D. Colo. 1978) the personal representative of the estate (and other plaintiffs) brought a § 1983 action against officers who wrongfully shot and killed the representative's brother. State law permitted survival of the action, but limited recovery to the victim's loss of earnings sustained prior to death. The court, noting that "*it is inconsequential that the actions under color of state law which violate a federally protected right may also constitute a tort*," held that § 1983 was not intended to incorporate such restrictive damage limits. (Id., 362.)

Similarly, in *Larson v. Wind,* 542 F. Supp. 25, 27 (N.D. Ill. 1982), a authority court found that a state survivorship statute which precluded recovery for punitive damages was inconsistent with section 1983. Larson also involved a plaintiff who died from causes unrelated to the conduct complained of in the action. The court went on to say that "section 1983's purpose of deterrence would be subverted by slavish application of a state survivorship rule denying punitive damages." Id. Other cases rejecting restrictive state laws on damages in § 1983 cases, see *Sager v. City of Woodland Park,* 543 F. Supp. 282 (D. Colo. 1982) and *Jackson v. Marsh,* 551 F. Supp. 1091 (D. Colo. 1982).

**D.    The Cases Relied upon by the Defense Fail to Establish That as a Matter of Law Plaintiffs Cannot State a Claim for the Estates' Pain Ans Suffering Damages.**

One of the very few cases not to follow the *Guyton* analysis, is *Venerable v. City of Sacramento,* 185 F. Supp. 2d 1128 (E.D. Cal 2002), the sole case discussed by the defense and which they ask this Court to consider as binding authority. First, the plaintiffs in *Venerable* were the parents and children claiming damages in wrongful death. The court found that Norma Venerable, decedent's mother, had standing to maintain a wrongful death claim under Cal. Civ. P. Code § 377.60(b) and Venerable's children were "successors in interest" and may pursue a survival action in addition to a wrongful death claim. See Cal. Civ. P. Code § 377.30. (Id., 1130.) Specifically, in *Venerable* the court <u>did not consider the</u>

rights of the Estate as a plaintiff, as is being alleged in this case and in most of the cases allowing such damages.  Thus, the sole district court case cited by the defense does not establish that "as a matter of law" such damages are not appropriate.

   **E.**  **The Motion Improperly Cites Two Unpublished Orders as Authority.**

  Additionally, the tactic of citing unpublished cases as authority is strictly prohibited by the Ninth Circuit's Rules of the U.S. court of Appeals, rule 36-3 which states "(a) Unpublished dispositions or orders of this court are not binding precedent except when relevant under the doctrine of law of the case, res judicata and collateral estopple.. (b) Unpublished dispositions and orders of this court may not be cited to or by the courts of this circuit . . ." (citing inapplicable exceptions.)  The Motion states that Local Rule 5-133 (I) allows for an **unpublished** opinion to be cited.  That rule is to the contrary, allowing for the procedure only where a reliable and recognized authority will be published. [4]  That is not the situation here and it is quite remarkable the defense would cede to itself the authority to use unpublished opinions to support an otherwise weak argument that "as a matter of law" this court is obligated to dismiss the damage claims.

  Thus, the vast majority of cases nationwide to consider this issue have rejected the constrictive argument of the defense and have allowed recovery of loss of life and per-mortem pain and suffering of the decedent in § 1983 actions.  This Court should deny Defendants' motion to exclude this evidence.

   **F.**  **Damages for Violation of a Constitutional Right May Allow for Recovery by an Estate for Loss of Life.**

---

[4] "If case, statutory, or regulatory authority is relied upon that has not been reported, published, or codified in any of the foregoing references, a copy of that authority shall be appended to the brief or other document in which the authority is cited. This requirement shall include, but not be limited to, the Statutes at Large, the Public Laws of the United States, the California Administrative Code, administrative regulations not contained in the Code of Federal Regulations or the Federal Register, and decisions and other matters published in specialized reporter services." Id., in pertinent part.

9

1	The motion cites not one case, statute or authority for the argument that the plaintiffs'
2	allegations for the Estates' claims for "loss of enjoyment for life's activities" should be
3	stricken.  There is an abundance of case law to the contrary and the Motions should be
4	denied.

5	In the seminal case of *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984) the
6	defendant officers appealed from the jury verdict and judgment of the district court, which
7	found that the defendant officer deprived decedent Daniel Bell and his family of their
8	constitutional rights by an unlawfully shooting and the finding that the officer, the Chief of
9	Police, and the investigating detective unlawfully conspired to conceal the true facts of
10	Daniel Bell's death.  Defendants appealed various components of the judgment of $1,590,670
11	in favor of family members and the estate of Daniel Bell for "loss of life."  There, the court
12	held that the state law wrongful death-survival statute, similar to California's, along with
13	state case law decisions construing those provisions ". . . which would preclude recovery to
14	Daniel Bell's estate for loss of life, are inconsistent with the deterrent policy of Section 1983
15	and the Fourteenth Amendment's protection of life." Id., 1240. "The Wisconsin law therefore
16	cannot be applied to preclude the $100,000 damages recovered by Daniel Bell's estate for
17	loss of life." Id.

> Deterrence of wrongful or negligent conduct is also a policy objective of tort law, but as in Wisconsin, survival and wrongful death statutes generally do not seek to deter wrongful deaths through the imposition of damages for loss of life itself.  The rationale is typically the extraordinary difficulty in measuring the value of the loss; and in the context of a survival action, there is the additional inability to restore a deceased to the state he would have enjoyed but for his death. [cite omitted] Yet given the stated tort policy of deterrence and the conceivable reduction of the incidence of tortious conduct created by the threat of substantial damages, these dilemmas amount to less than a compelling argument against awarding any damages at all for loss of life. Id., fn. 41.

In *Graham v. Sauk Prairie Police Commission,* 915 F.2d 1085 (7th Cir. 1990) plaintiff's § 1983 Fourteenth Amendment arise from the shooting death of her husband.  The officer defendant died from causes unrelated to the case shortly after it was filed.  The district court granted plaintiffs' summary judgment on the decedent's  fourth amendment excessive force claim and fourteenth amendment loss of life claim and in favor of the spouses' fourteenth amendment claim for lost society and companionship.  After a jury award to the spouse of $ 300,000 for lost society and companionship, $ 130,200 in compensatory damages and $ 550,000 for loss of life to the Estate, defendants challenged the loss of life damages on the grounds that because the officer had died, no deterrent policy would be advanced by the award.  Id., 1088.

*Graham* follow *Bell* where "[W]e stated that where the unconstitutional act is the taking of a life, there would result more than a marginal loss of influence on potentially unconstitutional actors and, therefore, on the ability of § 1983 to deter official lawlessness, if the victim's estate could not recover loss of life damages." Id., 1104.  First the court rejected the argument that because both the deceased and the officer were Caucasian that the award would not address an inference of racial animus present in  *Bell* and therefore had no effective deterrence on racial injustice, a historical  consideration of § 1983 explaining:

> While the loss of life damages in *Bell* may have been directed partially towards deterring deprivations of life that are motivated by racial animus, we emphasized that the legislative history underlying §  1983 expresses an unequivocal concern for *protecting life*. (Cite omitted, emphasis in the original.)  Thus, while §  1983 damages may in some cases be aimed at deterring a specific motivation (for instance, racial animus) for an unconstitutional killing, the overriding concern of §  1983 is deterring unjustified takings of life. Id., 1104-1105.

*Graham* also rejected the argument that because the individual officer acting insane at the time of the shooting and was now dead,  that the award would have no deterrent effect on him as an individual and therefore did not advance the purposes of § 1983.  The court found the fact that the officer could no longer be deterred "quite irrelevant."  It explained:

11

The deterrence objective of § 1983 damages is directed at a broader category of persons than the individual perpetrator alone. In *Bell*, this court stated that loss of life damages are intended to have a deterrent effect on "potentially unconstitutional *actors*." *746 F.2d at 1239* (emphasis added). No specific deterrence could have been accomplished in *Bell* because in that case, the offending officer had resigned from the force. Id., 1105.

Thus, it was held that the loss of life award to the estate was broadly directed towards "deterring any police officer who would contemplate taking the life of a person who poses no threat of harm to the officer or the public." Id.

3.  **PLAINTIFFS DISMISS CYA ONLY FROM THE ALLEGATIONS OF THE FIFTH AND SIXTH CLAIMS FOR RELIEF.**
4.  **THE MOTION TO DISMISS THE SECOND AND SIXTH CLAIMS FOR FAILURE TO TRAIN ARE NOT WELL TAKEN.**
    A.  **Claims For Relief Against Supervisors under Federal Law.**

Under federal law There are a number of ways a supervisor may be held individually liable: (1) " . . . if subordinate wrongdoing is known to the supervisory officer;" or (2) " . . . if he approved, condoned, or ratified, or encouraged the unconstitutional conduct . . ."or (3) "Supervisory liability exists *even without overt personal participation in the offensive act* if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is the moving force of the constitutional violation." *Redman v. County of San Diego,* 942 F.2d 1435, 1446-1447 (9th Cir. 1991), emphasis added.

Thus, defendants Templeton, Harada, Matlock, Padaguan Woodward, Stenoski and Thomas are sued under the first theory above for their direct supervision and participation in the events alleged in the First Amended Complaint. Harper and Loew are sued under the second and third theories described above.

B.  **Claims under State Law Are Appropriate.**

Government Code § 815 specifies that, except as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission

12

of the public entity or a public employee or any other person.  Government Code § 815.2 (a) provides that a public entity is liable for injury proximately caused by an act or omission of an employee within the scope of employment if the act or omission would give rise to a cause of action against the employee.  Government Code§ 820 (a) specifies that, except as otherwise provided by statute, a public employee is liable for injury to the same extent as a private person.

Together these statutes establish two principles: (1) *unless they are granted specific statutory immunity*, a public entity and its employees are liable in tort for the same causes of action that could be brought against a private person; and (2) absent a statute specifically imposing liability, a public entity and its employees are not liable for causes of action in tort that could not be pursued against a private party.  *Lueter v. California,* 94 Cal. App. 4th 1285, 1300 (2002).  The tort of negligence is recognized against a private party.  Thus, any liability for the negligence against a public entity and its employees does not need be created statutorily absent an express immunity.  See e.g., *Garcia v. Superior court,* 50 C. 3d 728 (1990) negligent misrepresentations by parole agent to ex-girlfriend that parolee would not harm her held actionable; *Clemente v. State*, 40 C. 3d. 202, 219 (1985), negligent accident investigation held actionable; *Hart v. County of Orange,* 254 Cal. App. Ed 302 (1967) where negligent failure to summons medical care for a prisoner was held actionable.  Here there is no immunity and the motion must be denied.

  **C.**  **The Allegations State a Claim for Negligence Against the Individually Named Supervisors for Their Failure to Supervise or Train.**

In *Wolfson v. Wheeler,* 130 Cal. App. 475, 482 (1933) based on early common law, it was established that while "Public officers are not ordinarily liable for the acts of subordinate officers, but wherever they participate in, or direct certain acts to be done or co-operate in the acts of negligence, they become liable." Id.  See also *Michel v. Smith,* 188 Cal. 199 [205 P. 113] (holding a law enforcement supervisor is not responsible for the acts of his subordinates "unless he has directed such acts to be done, or has personally cooperated in the offense."); and *Payne v. Brennion,* 178 Cal. App.2d 595, 598-599 (1960) echoing that the:

. . . general rule that a "public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done or has personally cooperated therein," or "unless the appointing officer fails to exercise reasonable care in the selection of the appointee." (*Michel v. Smith,* 188 Cal. 199, 201, 202 [205 P. 113].) This is an exception to the doctrine of respondeat superior and has no application to actions for damages resulting from the personal faults of a public officer even though the misconduct of a subordinate may be a contributing factor. ( *Fernelius* v. Pierce, 22 Cal.2d 226, 234 [138 P.2d 12].)

The foregoing general rule has been applied to various employees of public officers. (*County of Placer v. Aetna Cas. etc. Co.*, 50 Cal.2d 182 [323 P.2d 753] -- clerk appointed by justice of the peace; *Hilton v. Oliver,* 204 Cal. 535, 539 [269 P. 425, 61 A.L.R. 297] -- employee appointed by trustees of irrigation district; *Sarafini* v. *City & County of San Francisco*, 143 Cal.App.2d 570 [300 P.2d 44] -- police officer acting under police lieutenant; *Kangieser v. Zink*, 134 Cal.App.2d 559 [285 P.2d 950] -- police officer appointed by chief of police; *Marshall* v. *County of Los Angeles*, 131 Cal.App.2d 812 [281 P.2d 544] -- employee of sheriff; *Abrahamson* v. *City of Ceres*, 90 Cal.App.2d 523 [203 P.2d 98] -- police officer appointed by chief of police; *Reed* v. *Molony*, 38 Cal.App.2d 405, 409 [101 P.2d 175] -- special investigator employed by State Medical Board; *Downey* v. *Allen*, 36 Cal.App.2d 269 [97 P.2d 515] -- police officer appointed by chief of police; *Van Vorce* v. *Thomas*, 18 Cal.App.2d 723 [64 P.2d 772] -- deputy marshal of municipal court appointed by marshal; *Bower* v. *Davis*, 13 Cal.App.2d 678 [57 P.2d 574] -- police officer appointed by chief of police; *Noack* v. *Zellerbach*, 11 Cal.App.2d 186 [53 P.2d 986] -- deputy fish and game commissioner appointed by members of fish and game commission; *Shannon* v. *Fleishhacker*, 116 Cal.App. 258, 261 [2 P.2d 835, 3 P.2d 1020] -- park superintendent, assistant park superintendent and manager of playground appointed by members of park commission; *Whiteman* v. *Anderson-Cottonwood Irrigation* District,

1  60 Cal.App. 234 [212 P. 706] -- employee of irrigation district appointed by directors of
2  district.)
3       Thus, there is ample authority that where, as here, the supervisor are directly
4  involved and have acted negligently in the performance of their duties, whether it be
5  supervision or training or even hiring, the individual supervisors can be held liable under a
6  theory of negligence.
7  **5.   THE ALLEGATIONS FOR INJUNCTIVE AND DECLARATORY RELIEF IS**
8       **APPROPRIATE**
9       A complaint must contain a "demand for judgment for the relief to which (the
10 plaintiff) deems himself entitled." F.R.C.P. Rule 8 (a) (3).  And where equitable or
11 declaratory relief is requested the demand for relief must so state. F.R.C.P. Rule 8 (a);
12 *Dillard v. Merrill Lynch Pierce, Fenner & Smith Inc.,* 961 F.2d 1148,1155 (5th Cir. 1992).
13 Thus, Plaintiffs must allege the relief they will seek prospectively or they may otherwise
14 be barred for failing to allege it.
15      Defendants arguments address whether the plaintiff have standing and whether they
16 can prove the elements essential to prevail on a motion for a preliminary or permanent
17 injunction.  Here, at the pleading stage, Plaintiffs have set forth the proper allegations for
18 the *remedy* of injunctive or declarative relief and whether they will prevail is a matter for
19 the future if and when they file their motions for relief.  Defendants' premature argument
20 fails to recognize that Federal Courts have consistently found standing where defendants
21 were acting pursuant to a policy finding the policy itself creates the real and immediate risk
22 of being subjected to the unconstitutional conduct once again. (See e.g. *Easy Riders*
23 *Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996), (standing for injunction
24 which would prohibit the CHP from enforcing the helmet law according to guidelines that do
25 not conform to the law.)
26 Dated: January 8, 2007            **LAW OFFICES OF R. SAMUEL PAZ**
27
28                        By:   /s/ R. Samuel Paz
                              R. Samuel Paz, Esq.

15